**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| COREY WELLS, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:23-cv-105 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| RUSS' STEAMER SERVICE, LLC. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| Defendant, | : | |
| | : | |

**ENTRY AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 5)**

Currently before the Court is Defendant's Motion for Judgment on the Pleadings (the "Motion"). (Doc. No. 5.) Plaintiff Corey Wells ("Wells") filed the instant Complaint (the "Complaint") against Defendant Russ' Steamer Service, LLC ("RSS") alleging two causes of action. (Doc. No. 3.) Namely, count two of the Complaint alleges wrongful termination in violation of public policy ("Count Two"). (*Id.* at PageID 62.) RSS submits that it is entitled to judgment as matter of law respecting Count Two. (Doc. No. 5.) In his response to RSS's Motion (the "Response"), Wells argues that RSS's Motion is both premature and improper. (Doc. No. 7.) Wells identifies Count Two as an alternative claim subject to disputed facts which require discovery. (*Id.*) For the reasons set forth below, the Court **DENIES** the Motion.

I.       **BACKGROUND**

RSS is a provider of on-site mobile fleet services, offering mobile trailer fleet maintenance and repair.[1]  (Doc. No. 4 at PageID 77.) Wells began working for RSS from his home in

---

[1] RSS Mobile Trailer Repair Home Page, https://www.rsstrailerrepair.com/ (last visited Aug. 30, 2023).

Champaign County, Ohio as a Regional Sales and Operations Manager on or about February 23, 2021. (Doc. No. 3 at PageID 58.) In this role, Wells was tasked with managing RSS's sales in the state of Ohio as well as overseeing RSS's Ohio operations. (*Id.*)

The Complaint alleges that, in executing his duties, Wells noticed "problems with the jack stands RSS used to support" its trailers sometime before March of 2022. (*Id.*) Specifically, Wells noticed issues which he believed were likely to seriously injure RSS employees if not addressed. (*Id.*) As such, Wells allegedly communicated these concerns to his superior, Director Steve Robbins ("Robbins"), in writing to no avail. (*Id.*) Nevertheless, he allegedly continued communicating his concerns orally and in writing to both Robbins and RSS's owner, Russell Spranger, between March and September of 2022. (*Id.* at PageID 58-59.)

In mid-September of 2022, Wells allegedly learned of an incident involving RSS's jack stands that injured two RSS employees. (*Id.* at PageID 59.) Wells then notified Robbins of his intent to report the incident, as well as his previous complaints, to the Occupational Safety and Health Administration ("OSHA"). (*Id.*) Quickly following this exchange, Robbins requested that Wells meet him at a local job site. (*Id.*) At this meeting, Robbins terminated Wells' employment with RSS effective immediately. (*Id.*) RSS took no preceding employment actions with respect to Wells prior to his termination. (*Id.* at PageID 60.)

On March 6, 2023, Wells filed his Complaint against RSS in the Court of Common Pleas for Champaign County, Ohio. (Doc. No. 3.) On April 7, 2023, RSS filed a Notice of Removal to the Southern District of Ohio based on diversity jurisdiction under 28 U.S.C § 1332. (Doc. No. 1.) RSS subsequently filed its Answer and Counterclaim (the "Answer") on April 13, 2023. (Doc. No. 4.)

The Complaint alleges two counts: (1) violation of Ohio's Whistleblower Statute at Ohio

Rev. Code § 4113.52, and (2) wrongful termination in violation of public policy.  (Doc. No. 3 at PageID 62, 65.)  On April 24, 2023, RSS filed the instant Motion.  (Doc. No. 5.)  On May 3, 2023, Wells filed his Response (Doc. No. 7) and on May 5, 2023, RSS filed its Reply (Doc. No. 11).  Accordingly, the Motion is fully briefed and ripe for review and decision.

## II.    STANDARD OF REVIEW

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P 12(c) are reviewed under the same standard as motions to dismiss for failure to state a claim per Rule 12(b)(6).  *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010).   When considering a motion for judgment on the pleadings, "[a]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law."  *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (internal quotation marks omitted).  However, the court "need not accept as true legal conclusions or unwarranted factual inferences."  *JPMorgan Case Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Hindel*, 875 F.3d at 346-347 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks omitted)).  "[T]he plaintiff must provide the grounds for its entitlement to relief, and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'"  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citation omitted).  "A plaintiff falls short if [the plaintiff] pleads facts

'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-679); *see also Twombly*, 550 U.S. at 557 (a complaint will not withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual enhancement").

In reviewing motions for judgment on the pleadings, courts primarily consider the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); Fed. R. Civ P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Though the allegations contained in the complaint form courts' primary focus, courts may also account for "matters of public record, orders, [and] items appearing in the record of the case." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Additionally, courts may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dept. of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018).

When deciding on a matter of law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981). To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

### III.    ANALYSIS

The Court, applying Ohio law, makes its determination for purposes of the current Motion in two broad steps. First, the Court will generally discuss Ohio's common law claim for wrongful termination in violation of public policy. Second, the Court analyzes RSS's argument that Wells' public policy claim under Count Two cannot satisfy the jeopardy element of Ohio's common law governing such public policy claims.

### A.    Wrongful Termination in Violation of Public Policy Generally

Generally, employment relationships in Ohio are subject to "the common-law doctrine of employment at will." *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 171, 956 N.E.2d 825, 829 (Ohio 2011). Under this doctrine, termination of an at-will employee for any reason will not typically give rise to a cause of action. *Id.* (citing *Collins v. Rizkana*, 73 Ohio St. 3d 65, 67, 652 N.E.2d 653 (Ohio 1995)). However, the Supreme Court of Ohio has established an exception to the common law doctrine of employment at will where an employee's termination offends public policy. *Pytlinski v. Brocar Prod., Inc.* 94 Ohio St. 3d 77, 79, 760 N.E. 385, 387 (Ohio 2002) (internal citations omitted). Such public policy exists when it can be derived from statutes, the Ohio and/or United States Constitutions, administrative rules and regulations, or the common law. *See Greely v. Miami Valley Maint. Constrs., Inc.*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (Ohio 1990); *see also Painter v. Graley*, 70 Ohio St. 3d 377, 639 N.E.2d 51 (Ohio 1994).

When raising a claim for wrongful termination in violation of public policy, the plaintiff must establish that:

> (1) 'a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)'; (2) dismissal 'under circumstances like those involved in the plaintiff's

5

dismissal would jeopardize the public policy (the jeopardy element)'; (3) 'the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)'; and (4) lack of an 'overriding legitimate business justification for the dismissal (the overriding justification element).'

*Hale v. Mercy Health Partners*, 617 F. App'x. 395, 402 (6th Cir. 2015) (quoting *Collins*, 652 N.E.2d at 657-658). For purposes of disposition, the clarity and jeopardy elements of this test constitute pure questions of law. *Collins*, 652 N.E.2d at 658 ("We note further that the clarity and jeopardy elements, both of which involve relatively pure law and policy questions, are questions of law to be determined by the court." (internal citations and quotation marks omitted)). Conversely, the causation and overriding justification elements are questions of fact that are not placed at issue in the current Motion. *Id.* ("The jury decides factual issues relating to causation and overriding justification." (internal citations and quotation marks omitted)).

### B.  <u>Wrongful Termination in Violation of Public Policy – Jeopardy</u>

RSS claims that Count Two cannot satisfy the jeopardy element by using Ohio's whistleblower statute as its source of public policy. (Doc. No. 5 at PageID 92-94.) RSS contends that Ohio's whistleblower statute, Ohio Rev. Code § 4113.52, provides Wells adequate remedies and therefore, Wells' public policy claim fails as a matter of law. (*Id.*) In response, Wells asserts his right to maintain a public policy claim under Ohio's whistleblower statute. (Doc. No. 7 at PageID 105.) Wells additionally avers that he sufficiently pled alternative independent sources of public policy favoring workplace safety under Ohio Rev. Code §§ 4101.11 and 4101.12. (Doc. No. 7 at PageID 105.).

Based on developing law, the Court finds that Ohio Rev. Code §§ 4101.11 and 4101.12 are too broad to constitute clear sources of public policy favoring workplace safety. *Romero v. City of Middletown*, 479 F. Supp. 3d 660, 675 (S.D. Ohio 2020) (finding that Ohio Rev. Code §§ 4101.11 and 4101.12 and "the policies reflected therein" are too general and broad to satisfy the

clarity element of a public policy claim (internal citations and quotation marks omitted)). However, as the Parties do not dispute whether Wells' citation to Ohio's whistleblower statute constitutes a clear statement of public policy, the Court acknowledges that it does. Thus, the Court turns its focus to whether Wells may satisfy the jeopardy element based on the public policy borne from Ohio Rev. Code 4113.52.

As stated above, to succeed on a common law public policy claim, a plaintiff must show that the public policy at issue would be jeopardized by his dismissal. *Hale*, 617 F. App'x. at 402 (quoting *Collins*, 652 N.E.2d at 657-658). A plaintiff's satisfaction of this jeopardy element depends on: (1) "what kind of conduct is necessary to further the public policy at issue," (2) "whether the employee's actual conduct fell within the scope of conduct protected by . . . the policy," and (3) "whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal." *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 Fed. App'x. 256, 264 (6th Cir. 2008) (quoting *Himmel v. Ford Motor Co.*, 342 F.3d 593, 599 (6th Cir. 2003)).

The Supreme Court of Ohio has, at times, questioned whether any of the jeopardy element's three prongs can be satisfied where statutory remedies exist to protect public policy. *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 144, 773 N.E.2d 526, 531 (Ohio 2002); *Leininger v. Pioneer Natl. Latex*, 115 Ohio St. 3d 311, 316-317, 875 N.E.2d 36, 41-42 (Ohio 2007). The Supreme Court of Ohio has determined to focus its inquiry in this regard on "the issue of adequacy of statutory remedies." *Wiles*, 773 N.E.2d at 531 (citing *Collins*, 652 N.E.2d at 660). "It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy." *Leininger*, 875 N.E.2d at 42.

Nonetheless, the existence of statutory remedies does not have a preclusive effect on the

jeopardy element *per se*. *Wiles*, 773 N.E.2d at 531. The Supreme Court of Ohio has merely recognized that "[i]f the statute that establishes public policy contains its own remedies, *it is less likely* that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." *Id.* (internal citation and quotation marks omitted) (emphasis added). Such statutory remedies have been deemed adequate in cases citing public policy contained in the federal Family Medical Leave Act and Ohio's civil rights statutes.[2] *See Wiles*, 773 N.E.2d 526; *see also Leininger*, 875 N.E.2d 36. However, the Supreme Court of Ohio has not made a similar determination with respect to the State's whistleblower statute contained in Ohio Rev. Code § 4113.52. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 156, 677 N.E.2d 308, 324 (Ohio 1997) ("[T]he mere existence of statutory remedies in R.C. 4113.52 does not, without more, operate to bar recognition of appellant's *Greely* claim for tortious discharge in violation of R.C. 4113.52").

In the instant case, the Court finds RSS's arguments pertaining to Count Two unavailing. To support its proposition that Wells' public policy claim cannot satisfy the jeopardy element as a matter of law, RSS largely relies on unreported cases not decided by the Supreme Court of Ohio and dicta. (Doc. No. 5 at PageID 93-94.) However, the Motion fails to address the Supreme Court of Ohio's prior decisions to allow public policy claims citing the public policy embodied in the State's whistleblower statute. The statutory remedies contained in Ohio Rev. Code 4113.52 do not preclude Wells' satisfaction of the jeopardy element as a matter of law. In his Complaint, Wells invokes Ohio's whistleblower statute to support the State's public policy favoring workplace safety. (Doc. No. 3 at PageID 62-63.) Indeed, workplace safety constitutes a sufficient public policy to justify a claim for wrongful termination in violation of public policy. *Pytlinski*, 760

---

[2] Ohio Rev. Code § 4112, *et seq.*

N.E.2d at 388. Although Ohio Rev. Code § 4113.52 contains statutory remedies, the mere existence of those remedies is not enough to summarily defeat Wells' public policy claim under Count Two.

Without more, the Court must base its determination on whether Wells' dismissal jeopardizes the public policy embodied in Ohio's whistleblower statute. Taking the allegations in the Complaint as true, Wells put RSS on notice of his safety concerns on multiple occasions (Doc No. 3 at PageID 58-59), such complaints are integral to ensuring workplace safety, and permitting Wells' termination under the present circumstances jeopardizes Ohio's public policy favoring workplace safety. Therefore, Wells' public policy claim under Count Two satisfies the jeopardy element for purposes of this Motion.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's Motion for Judgment on the Pleadings (Doc. No. 5).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, September 8, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
